## Franks v. Middletown Township

*Richard R. Fink*, for appellant.
*William B. Moyer*, for appellees.

MIMS, *J.*, December 13, 1979—This is an appeal, pursuant to the provisions of the Act of June 15, 1951, P.L. 586, 53 P.S. §811 et seq., from the suspension of a Middletown Township police officer. The facts of this case, as summarized below, are uncontroverted.

Appellant, David Franks, is an officer of the Middletown Township Police Department. On September 3, 1978, Officer Franks and the other members of his squad were informed by their squad sergeant, John Cunningham, that an off-duty speed trap would be held on Thursday, September 7, 1978, from 8:00 a.m. until noon. All squad members were informed that they were required to participate in this off-duty speed trap. An off-duty speed trap is one scheduled outside of the squad's normal duty hours. Officers who participate in off-duty speed traps do so in uniform and are paid for this overtime at one and a half times their normal hourly rate of pay.

On September 5, 1978, at the squad briefing held prior to the commencement of the 12 midnight to 8:00 a.m. shift, Sergeant Cunningham informed Officer Franks and the other members of his squad that the off-duty speed trap previously scheduled for September 7, 1978, was rescheduled to September 6, 1978, from 8:00 a.m. until noon. At 6:45 a.m. on September 6, 1978, Officer Franks informed Sergeant Cunningham that he did not think that he would be able to participate in the off-duty speed trap. At 8:00 a.m. on September 6, 1978, Sergeant Cunningham ordered Officer Franks to participate in the off-duty speed trap, and Officer Franks refused to do so.

On September 7, 1978, Sergeant Cunningham forwarded to the Township Police Chief, Howard Shook, a written recommendation that Officer Franks be suspended for three days for insubordination and failure to obey a lawful order. Officer Franks requested a hearing before Chief Shook, and this hearing was held on September 14, 1978. On September 25, 1978, Chief Shook ordered Officer Franks suspended for three days without pay for

a violation of section 17 of Middletown Township Ordinance No. 78-3 (hereinafter, the "Police Manual"). This section entitled "Insubordination" states: "Officers shall promptly obey any lawful order of a superior officer."

Officer Franks requested a hearing before the Township Manager to review Chief Shook's decision. After this hearing, held on September 29, 1978, the Township Manager affirmed Chief Shook's decision to suspend Officer Franks for three days without pay. Officer Franks then requested a hearing before the Middletown Township Board of Supervisors. After this hearing, held on December 12, 1978, the Board of Supervisors affirmed Officer Franks' three day suspension without pay.

The Board of Supervisors made the following two findings of fact: (1) "Officer David Franks was given a lawful order by his superior, Sergeant Cunningham, to participate in an off-duty speed trap on September 6, 1978"; and (2) "Officer David Franks refused to obey a lawful order as given by Sergeant Cunningham on September 6, 1978." The Board of Supervisors' conclusion of law was "Officer Franks knowingly disobeyed a lawful order from a superior officer."

In an appeal from the suspension or dismissal of a municipal police officer, the common pleas court may take additional testimony and find for itself the facts necessary to a just determination of the controversy: Vega Appeal, 383 Pa. 44, 117 A. 2d 736 (1955). The parties to this appeal have stipulated that it shall be decided upon the record of proceedings before the Middletown Township Board of Supervisors, the Police Manual, the Collective Bargaining Agreement between Middletown Township and the Middletown Township Police

(hereinafter, the "Collective Bargaining Agreement"), and if it is ruled admissible, an affidavit submitted on behalf of appellant.

Appellant contends that appellees have not met the burden of proof required for the imposition of the suspension. He challenges the lawfulness of Sergeant Cunningham's order to Officer Franks, arguing that: (1) although overtime work can be offered to a police officer, it need not be accepted by a police officer in the absence of an emergency as defined in Article II, Section 9 of the Collective Bargaining Agreement; and, (2) under Article IV, Section C of the Collective Bargaining Agreement only the Township Manager and the Chief of Police have the right to schedule overtime, and neither of these persons scheduled the overtime which Officer Franks refused to perform.

A policeman may be suspended for "neglect or violation of any official duty" and for "disobedience of orders." Act of June 15, 1951, P.L. 586, 53 P.S. §812: "[I]n order to impose upon [a police officer] the severe penalty of suspension or dismissal, proof of the charges to sustain such action would have had to be clear and convincing." Templeton Appeal, 399 Pa. 10, 12-13, 159 A. 2d 725, 727 (1960).

It is undisputed that Officer Franks was ordered by his superior, Sergeant Cunningham, to participate in the off-duty speed trap and that he disobeyed that order. Appellant questions only the lawfulness of that order, asserting that: "The Township has not met their burden of showing, by clear and convincing evidence, that a lawful order was given to Officer Franks." Appellant asserts that under the Collective Bargaining Agreement, and in the absence of an emergency as defined therein, he was not required to work the off-duty speed trap scheduled as overtime.

The burden of proof that the order was lawful (i.e., that Officer Franks was obliged to work overtime when ordered to do so by Sergeant Cunningham) is on appellees. To meet this burden, the appellees have presented the aforementioned stipulated record. In particular, appellees have invited our attention to Article IV, Sections A through E of the Collective Bargaining Agreement, stating that these sections allow the Township Manager and the Police Chief to schedule paid overtime for police officers. Article IV, Section C of the Collective Bargaining Agreement expressly grants the authority to schedule overtime to the Township Manager and the Police Chief.

Appellant contends that the employer's authority to schedule overtime does not imply that police officers are obliged to perform overtime work for which they have been scheduled. He contends that the authority to schedule overtime is the equivalent of the power to make an offer of additional work at an increased rate of compensation and that the police officer may accept or reject this offer. Appellant acknowledges that a police officer is obliged to perform overtime work in an emergency, but both appellant and appellees agree that there was no emergency at the time that Officer Franks disobeyed Sergeant Cunningham's order to report for overtime work.

Article IV, Section C of the Collective Bargaining Agreement states: "The Manager and the Chief have the exclusive right to schedule overtime work as required in the manner most advantageous to the Employer, commensurate with the applicable provisions of the agreement." The only other provisions of the Collective Bargaining Agreement which expressly address overtime are contained in

Article IX, entitled, "Incidental Economic Benefits." These provisions deal only with increased compensation for overtime.

Article IV, Section C of the Collective Bargaining Agreement can be construed as requiring police officers to work overtime in nonemergency situations if the police officer's obligation to work overtime is viewed as a corollary of the manager's and the chief's authority to schedule overtime. Additionally, the words "as required" in Article IV, Section C can be construed as expressly indicating that police officers are required to perform any overtime work for which they have been scheduled. This construction appears reasonable, since if the purpose of this section were merely to grant the manager and the chief the power to schedule overtime without obligating police officers to perform it, the words "as required" would be mere surplusage.

Appellees have also invited our attention to other sections of Article IV of the Collective Bargaining Agreement as set forth below:

"A. Except as provided in this agreement, the Association recognizes the right of the Employer to operate and manage its affairs.

"B The Association recognizes the exclusive right of the Chief to establish departmental rules and procedures.

"D. It is understood by the parties that every duty connected with operations enumerated in job descriptions is not always specifically described, and it is intended that all such duties shall be performed by the employee.

"E. The Chief and the Township Manager reserve the right to discipline or discharge for cause. The Employer reserves the right to lay-off employ-

ees of the police department consistant [sic] with Second Class Township Code. The Employer and the Chief of Police shall determine work schedules consistent with this agreement and establish methods and processes by which such work is performed."

Although they do not specifically address the issue of employe work schedules, Sections A, B, and D of Article IV of the Collective Bargaining Agreement grant broad powers to the township and the Police Chief. Section E of Article IV of the Collective Bargaining Agreement grants broad power to the Police Chief to determine work schedules. The only limitation on that power is that the schedules must be "consistent with this agreement." The only other provisions of the Collective Bargaining Agreement related to work schedules are Article IX entitled "Incidental Economic Benefits"; Article X entitled "Leave Time"; and Article II, entitled "Definitions." Section (9) of Article II defines an emergency as "any situation which jeopardizes the public health, safety and welfare, as defined by state law or city ordinance; and requires alteration of scheduled work hours, shifts, and/or personnel assignments."

Although the term "emergency" is defined in Article II, this term is not used anywhere else in the Collective Bargaining Agreement. Appellant apparently contends that this definition is the only section in the Collective Bargaining Agreement which allows the employer to schedule mandatory overtime. All of appellant's contentions regarding the issue of whether police officers are obliged to perform overtime work were also presented at the Township Board of Supervisors hearing.

In addition to the Collective Bargaining Agreement, the Board of Supervisors also heard testimony concerning the practice of the parties to the agreement regarding overtime. If the Board of Supervisors found that the Collective Bargaining Agreement were in some way ambiguous it could properly consider the practice of the parties to the agreement as an aid in determining the intention of the parties. The testimony indicated that for the past ten to twelve years it has been the practice of the Middletown Township Police Department to hold off-duty speed traps. Prior to the execution of the Collective Bargaining Agreement, police officers were ordered to work off-duty speed traps without compensation. Sometimes they were given compensatory time off, and sometimes they were not. Subsequent to the execution of the Collective Bargaining Agreement, the police chief directed his squad sergeants to hold one speed trap per week for each squad. The squad sergeant was given the authority to schedule the speed trap during normal duty hours or off-duty hours. If it was performed during off-duty hours, police officers who participated in it were compensated for their overtime at one and a half times their normal hourly wage.

This evidence as to the practice of the parties aids in construction of the Collective Bargaining Agreement. If the parties intended to eliminate the employer's prior practice of ordering police officers to participate in off-duty speed traps, they would have done so in the agreement. Instead, they provided that police officers who were required to work overtime be paid an increased rate of compensation.

We find no merit in appellant's contention that Sergeant Cunningham's order was unlawful because Article IV, Section C of the Collective Bar-

gaining Agreement required the Township Manager or the Police Chief to personally schedule any overtime to which police officers are ordered.

For the foregoing reasons, we enter the following

ORDER

And now, December 13, 1979, the order of the Middletown Township Board of Supervisors suspending Officer Franks for three days without pay is affirmed.